THE ST. JOSEPH BOARD OF PUBLIC SCHOOLS V. GAYLORD
et al., Appellants.

| 86 | 401 |
| 100 | 447 |

1. **General Assembly.** One general assembly cannot prescribe the manner or the language by which a subsequent general assembly shall amend, alter or repeal a law passed by the former.

2. **St. Joseph Board of Public Schools:** BONDS: AUTHORITY TO ISSUE. The St. Joseph board of public schools had authority, by virtue of General Statutes, 1865, chapter 47, section 11, to issue, during the years 1868 and 1871, its bonds to raise money to build school houses ; and, also, to issue its renewal refunding bonds, under Revised Statutes, 1879, section 7034.

*Appeal from Buchanan Circuit Court.*—HON. JOSEPH P. GRUBB, Judge.

AFFIRMED.

*Hough, Overall & Judson* for appellants.

(1) Section 7034, Revised Statutes, authorized respondent to issue the renewal funding bonds in question. The law of 1877 can be enforced without the necessity of employing a repeal of section 23 of respondent's charter. Besides, laws are presumed to be passed with deliberation and with full knowledge of all existing ones, and appellants insist that it is reasonable to suppose that if the general assembly had intended to alter respondent's charter the courts would not have been left to conjecture in the face of a positive prohibition against the construction of amendment by implication. (2) It is evident from the title of the act of 1877, and from its provisions, that it was intended to apply to those corporations only known as "boards of education." There are known to the laws of Missouri, as parts of the public school system,

corporations that may be divided into four classes, viz. :
(*a*) By section 7, page 129, of Laws of Missouri, 1870,
the governing bodies of the public schools of any city,
town or village, that elects to place itself under the act
of March 21, 1870, is declared to be "a body corporate
by the name of the board of education of said city,
town or village." (*b*) There are "boards of education"
of other cities, towns and villages governed by special
laws, and which by section 1, page 127, Laws of Mis-
souri, 1870, are exempt from the law approved March
21, 1870. (*c*) By section 19, page 144, Laws of Missouri,
act approved March 19, 1870, the governing body of the
public schools in each congressional township is declared
to be "a body politic and corporate in law, and shall be
known by and under the name and title of township
board of education of township No. ———, range No.
———, county of ———, and state of Missouri." At
different times the general assemblies of Missouri have
given charters to the governing bodies of the public
schools of certain cities, as, for instance, to respondent,
the "St. Joseph Board of Public Schools," and the
"Board of President and Directors of the St. Louis
Public Schools." The act of 1877 mentions only one of
these classes as having conferred upon it the power of
issuing renewal funding bonds. What right has a court
to suppose that the legislature intended to grant to each
six miles square of farming land in Missouri, surveyed
into a congressional township, the right to flood the
world with its refunding bonds because it has said that a
certain corporation known by a designated name shall
have that power? The judgment of the court below
should have been for defendant.

*Crosby, Rusk & Craig* for respondent.

(1) It was not competent for that legislature to bind
a subsequent one to any particular method of altering

or repealing a public act, much less to incorporate within it any inhibitory provision which could stand against and overcome the clearly expressed intention of a subsequent legislature. (2) There would seem to be little doubt that it was the legislative intent that section 11, of chapter 47, of the General Statutes, authorizing the issue of bonds, should apply to, and, if need were, to amend the St. Joseph charter, and as little doubt that if such were the intent to be drawn from the whole chapter, such was the effect of the section. (3) It was not the intention of the legislature by the act of 1867 to restrict the powers of school districts within any narrower limits than those imposed by the act amended. The act of 1867 was intended to apply to all boards of education, whether organized under the provisions of chapter 47, or under any other general or special law, and if such was the intention, respondent had authority under the general law, if not by virtue of its charter, to issue the bonds it issued in 1868.

*Thomas F. Ryan* for the taxpayers.

(1) The charter of the St. Joseph board of public schools was approved January 4, 1860, and amendments thereto approved March 13, 1866, and March 20, 1872. Neither in the charter nor amendments to the same can there be found any express power to issue bonds for the building of school houses or for any other purpose. If such power exists, it must be an implied power granted to said board of education. Corporations have no such power. " Corporations have not the implied power to borrow money and issue commercial and negotiable instruments." Dillon on Municipal Corporations (3 Ed.) sec. 507 ; 15 Wall. 566 ; 16 Wall. 6; 19 Wall. 478 ; and see section 106 (3 Ed.) Dillon, and authorities cited in notes. " Corporations have only such powers as are specially given by

their charters or necessary to carry into effect some specified power." 9 Mo. 507; 10 Mo. 559; 43 Mo. 353. "They must act strictly within the power conferred on them." 36 Mo. 294. "The distinction between a natural person and a corporation is that while the former may make any contract not prohibited by law, or against public policy, the latter can exercise only such powers as are expressly conferred on them by their charter." 37 Mo. 399. That the implied power to issue bonds was not intended to be granted to plaintiff by its act of incorporation is evident from the provisions of section 14 of said act. (2) The power to issue the bonds was not given by the general laws of the state.

BLACK, J.—The pleadings in this case admit that plaintiff, The St. Joseph Board of Public Schools, in 1868 and 1871, issued a large amount of bonds to raise money to build school houses. These bonds were sold and the interest thereon paid up to October, 1880. Judgments have been rendered on subsequent maturing coupons by the circuit court of the United States, and writs of mandamus have been issued directing the levy and collection of the bonds to pay such judgments. To pay these matured and maturing bonds, and acting by authority of section 7034, Revised Statutes, 1879, the plaintiff, in March, 1885, directed the issue of $130,-000 of renewal funding bonds. These funding bonds were issued of date March 2, 1885, and were sold to the defendants for $124,713, to be delivered and paid for at a specified time. The contract provides that it shall not be binding on defendants unless the bonds were issued in conformity to and by authority of law, so as to be the valid obligation of plaintiff. Upon tender of the bonds at the proper time, the defendants refused to accept and pay for the same, and hence this suit, which resulted in a judgment for plaintiff, from which the defendants appealed.

The defendants say, in their answer, section 7034 only applies to those corporations designated in the laws of this state as "boards of education," and that said section has no application to plaintiff, because the twenty-third section of plaintiff's charter is not in express terms designated. Interested parties, though not made such on the record, have filed briefs in which they dispute the validity of the original bonds. This question will be first considered.

1. By the act of January 4, 1860 (Acts of 1859, p. 111), and the amendatory act of March 13, 1866 (Acts of 1865-6, page 209), the residents of school district number one, in school township eight, Buchanan county, as the limits were then, or might thereafter be established, were made a body corporate by the name of the "St. Joseph Board of Public Schools," with its powers invested in and duties devolved upon a president and directors. These acts give them power to make and certify annually to the county court the amount of money necessary to be raised for the purpose of building and repairing school houses, paying teachers, etc., which the county court is required to levy and collect with other taxes; the amount, however, not to exceed one-half of one per centum in any one year. No express authority is given plaintiff, by either of these acts, to borrow or issue bonds for any purpose. The general statutes of the state were, doubtless, relied upon for authority so to do.

The twenty-second section of the special law of 1860 refers to and makes applicable to plaintiff, so far as the provisions are consistent, the general act relating to school corporations in cities, towns and villages, approved December 12, 1855. The law of 1860 (section 23) first reserves to the general assembly the power to change or repeal the same, and then provides: "But no law hereafter passed shall be construed as changing, altering

or repealing the whole, or any part of this act, unless this act be expressly mentioned in such law."

Chapter 47 of the General Statutes of 1865, provides a method by which any city or town, with territory attached for school purposes, may be organized under the corporate name of the "board of education" of such city or town, with powers not conferred upon school districts in general. The first section, among other things, says that the provision of that chapter shall not apply to "any city, town or village, or any part thereof, which is now governed as to schools by any special law." The eleventh section is as follows: "The board of education of any city, town or village elected in pursuance of this act, as also the board of education, or school directors of any city, town or village already organized under any special act, to enable them to borrow money for building school houses, are hereby authorized to issue bonds, running," etc.

The general assembly of 1859 could not determine how or by what language alone the special law of 1860 should be amended, altered, or repealed. The assertion in that respect was not binding upon any subsequent session of that body. The latter might amend, alter, or repeal the law by the use of any language that was pertinent and thought to be best. The will of any subsequent general assembly, in that respect, was supreme. Nor do we have any doubt but that section eleven of the general law of 1865 was intended to and does apply to plaintiff. It is true, if the plaintiff and like organizations are intended, it is because of the expression "also the board of education or school directors of any city * * * already organized, under any special act." It is true that the charter name of plaintiff was, in part, "board of public schools," but we do not regard this difference as material. It must be borne in mind that many cities and towns in this state were organized with and without attached territory for school purposes under

special acts. They were, so far as they had corporate powers, public corporations, and at all times subject to the will of the legislature. Though organized in whole or in part under special acts, they were a part of the system of public schools of this state, as much so as if acting wholly under general laws.

Section 14, of chapter 47, also provides: "The provisions of sections seven, eight, nine, and ten of this chapter shall also apply to the *board of education or directors* of any city, town, or village, already organized under any law for school purposes, except the city of St. Louis." Why make this exception, unless the general assembly believed the language previously used therein would apply to the "board of presidents and directors of the St. Louis public schools?" The description of the corporations from which the exception is made is almost the same as that used in section eleven.

These considerations all lead to the conclusion that section eleven was intended to and did apply to plaintiff, and hence gave it authority to issue the bonds at that date. By the act of March 13, 1867 (Acts of 1867, p. 163), this section was made to read as follows:

"The board of education elected in pursuance of this act, as well as the board of education or school directors of any city, town, village or district already organized under any law authorizing them to borrow money for building school houses, are hereby authorized to issue bonds," etc. While there is some change in the language of this section, we think it still applicable to all those school corporations which at that date had authority to issue bonds to build school houses, and we have seen the plaintiff did then have the power. In one sense the plaintiff was organized under the special act of 1860, but it was certainly acting by authority also of the act of 1866, and portions of the general law, and in this sense it was organized under all these laws, at the date of this last act, and it is in this sense the language

was used.   It was not designed to take away powers then existing in regard to issuing bonds.

2.   If section eleven, of chapter forty-seven, General Statutes, 1865, applied to plaintiff corporation, then it is very evident that section 7034, Revised Statutes, 1879, also applies.   Any further consideration of this branch of the case is unnecessary.

The judgment of the circuit court is affirmed.   All concur.